UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

---

NATIONAL LABOR RELATIONS BOARD
PROFESSIONAL ASSOCIATION
13217 NEW HAMPSHIRE AVENUE
P.O. BOX 15048
SILVER SPRING, MD 20904

                   Plaintiff,

          v.

FEDERAL SERVICE IMPASSES PANEL
1400 K STREET NW
WASHINGTON, DC 20424

FEDERAL LABOR RELATIONS AUTHORITY
1400 K STREET NW
WASHINGTON, DC 20424,

NATIONAL LABOR RELATIONS BOARD
1015 HALF STREET SE
WASHINGTON, DC 20570,

                   Defendants.

Civil Action No. _____

---

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF CHALLENGING AGENCY DECISION AS IMPROPER AND ULTRA VIRES

### PARTIES, JURISDICTION AND VENUE

1.  The plaintiff in this action is the National Labor Relations Board Professional Association ("NLRBPA").

2.  Plaintiff NLRBPA is a labor organization with its principal place of business in Maryland and doing business in several states and territories including

1

Maryland, Virginia, and the District of Columbia.   The NLRBPA maintains an

office at 13225 Clifton Road, Silver Spring, MD 20904.

3.      The defendants in this action are the Federal Service Impasses Panel

("Panel"), the Federal Labor Relations Authority ("FLRA"), and the National Labor

Relations Board ("NLRB").

4.      The Panel is a separate "entity" within the FLRA empowered by the

Federal Service Labor-Management Relations Statute ("the Statute"), 5 U.S.C. §

7101 et seq, to resolve federal-sector bargaining impasses by "tak[ing] whatever

action is necessary and not inconsistent with [the Statute] to resolve the impasse." 5

U.S.C. § 7119(c)(5)(B).

5.      The Statute provides that "The Panel or its designee shall promptly

investigate any [negotiation] impasse presented to it." 5 U.S.C. § 7119(c)(5)(A).

6.      The Panel's actions are "binding on [the] parties during the term of the

agreement, unless the parties agree otherwise." 5 U.S.C. § 7119(c)(5)(C).

7.      Decisions by the Panel are not subject to any direct appeal on their merits.

8.      Accordingly, there is no statutory means by which to obtain review of the

constitutionality of Panel actions.

9.      Mark A. Carter is Chairman of the Panel; and Karen Czarnecki, Robert

Gilson, Maxford Nelson, Andrea F Newman, David Osborne, Jonathan Riches, and

F. Vincent Vernuccio are Members of the Panel (collectively, "Panel Members") have

each accepted appointments to their positions with the Panel by President Donald

J. Trump.

10.    None of the Panel Members has been confirmed by the Senate.

11.    Defendant National Labor Relations Board ("NLRB") is a federal agency

and a party to proceedings with the NLRBPA before the Panel and the Panel

Members.  Defendant Federal Labor Relations Authority is an agency of the United

States with responsibility relating to labor relations for employees of the federal

government.  5. U.S.C. §7105.

12.    The instant case involves a controversy arising under the laws of the

United States, and the defendants in the instant case are agencies of the United

States.

13.    Jurisdiction is accordingly proper pursuant to 28 U.S.C. §§ 1331 and 1346.

14.    Venue is proper under 28 U.S.C. § 1391(e)(1) because the defendants are

"officer[s] or employee[s] of the United States or any agency thereof acting in [their]

official capacity[ies] or under color of legal authority, or an agency of the United

States," and the District of Maryland is a "judicial district" in which "a substantial

part of the events or omissions giving rise to the claim occurred," and (in any event)

where "the plaintiff resides."

## BACKGROUND OF THE DISPUTE

15.    The NLRBPA is the exclusive bargaining representative for two

bargaining units comprised of approximately 120 professional employees at the

NLRB's headquarters in Washington, DC pursuant to the Statute.

16.     One of those bargaining units consists of NLRB employees working for the members of the Board ("the Board-side unit"); the other consists of employees working for the NLRB's General Counsel ("the General Counsel-side unit").

17.     Since October 2018, the NLRBPA has been engaged in negotiating new collective-bargaining agreements with the NLRB.

18.     The first phase of these negotiations has involved the negotiation of bargaining "ground rules."

19.     In late November and mid-December 2018, the parties exchanged opening proposals for ground-rules bargaining.

20.     The parties met twice in December 2018 and once in January 2019 and tentatively agreed to a number of provisions.

21.     On February 8, 2019, the NLRB unilaterally notified the NLRBPA that it would request bargaining assistance from the Federal Mediation and Conciliation Service ("FMCS"). The parties met once in March 2019 and once in May 2019 with the assistance of an FMCS Commissioner, during which time the NLRB offered regressive proposals, that is proposals which were generally less beneficial to the NLRBPA than proposals previously tendered by the NLRB in the negotiations.

22.     On May 13, 2019, the NLRB refused to attend a scheduled bargaining session, which prompted the NLRBPA to file grievances alleging that the NLRB committed an unfair labor practice by engaging in bad-faith bargaining citing, among other things, offering predictably unacceptable proposals designed to frustrate rather than advance terms negotiations; prematurely declaring impasse;

refusing to explain regressive proposals; repudiating an agreed-upon deadline for the NLRBPA's submission of counter-proposals; and sending representatives who lacked the authority to negotiate on behalf of the NLRB.

23.    On May 20, 2019, one week after refusing to meet for a scheduled bargaining session, the NLRB filed a request for assistance with the Panel alleging that it had reached a bargaining impasse with the NLRBPA and asking the Panel to assert jurisdiction over that impasse.

24.    On May 23, 2019, the NLRBPA then filed additional grievances asserting that the NLRB had insisted to impasse upon the imposition of proposals that constitute permissive subjects of bargaining over which the NLRBPA has no duty to bargain.

## DEFENDANTS' UNLAWFUL ACTS

25.    By letter dated May 28, 2019, the Panel notified the parties that a Panel representative would conduct "an initial investigation to determine whether the Panel should assert jurisdiction." [Exhibit 1.]

26.    On June 26, 2019, Panel representative Victoria Gillen notified the NLRBPA that the Panel was soliciting a written position from both the NLRBPA and the NLRB on two matters: "(1) if the [NLRBPA] is challenging that the parties are at impasse, provide [NLRBPA's] argument including reference to any attempts at mediation and/or declaration of impasse; and (2) if the [NLRBPA] is claiming that collateral matters (e.g., [unfair labor practices], grievance, negotiability, any pending appeals) prevent the Panel from asserting jurisdiction, provide the

[NLRBPA's] argument including reference to potential remedies of the pending matters that could impact bargaining over the ground rules." [Exhibit 2.]

27.    On July 15, 2019, the NLRBPA timely submitted its position statement challenging the NLRB's claim of impasse and asserting that several collateral matters prevented the Panel from asserting jurisdiction.

28.    On or about August 9, 2019, Defendant Panel, by member Osborne, without reasoning, explanation or argument, summarily asserted authority over the entirety of the NLRB-NLRBPA bargaining dispute and ordered the parties to provide final offers on the issues at impasse and a statement of position limited to 14 double-spaced pages. [Exhibit 3.]

29.    The NLRBPA's position statement reiterated the NLRBPA's position that no valid impasse could exist as to various agency proposals because those proposals were presented in bad faith, addressed permissive subjects of bargaining, or both. [Exhibit 4, at 1.]

30.    The NLRBPA's position statement further explained that the Panel, assuming that it could exercise authority over the parties' impasse at all, had no Constitutionally-appointed members and could not lawfully act. [Exhibit 4, at 1-4.]

31.    On May 25, 2018, Donald J. Trump issued Executive Order 13,837, an order which, among other things, purports to drastically restrict federal-sector unions' ability to incur official time. That executive order was subject to a judicial injunction for over a year, but after the underlying lawsuit was dismissed on

jurisdictional grounds without reaching the merits, those provisions came into effect
on October 3, 2019.

32.     On October 18, 2019, without prior notice or bargaining, the NLRB issued
the NLRBPA a "notice" purporting to require preauthorization for the use of official
time, i.e. work time spent engaging in representational activities for the Union.
[Exhibit 5.]

33.     Since issuance of the October 18, 2019 notice, although not required by
either that notice or Executive Order 13,837, the NLRB has near-uniformly denied
applications to engage in official time to prepare for collective-bargaining
negotiations.

34.     On October 23, 2019, the NLRB issued the NLRBPA another "notice"
purporting, as of October 30, to prohibit the NLRBPA from using agency property,
broadly defined, for virtually any purpose relating to collective bargaining.
Although the NLRB subsequently held this notice in abeyance as to the General
Counsel-side unit, it has implemented the notice as to the Board-side unit. [Exhibit
6.]

35.     On October 25, 2019, the NLRB issued another "notice" to the NLRBPA in
which it unilaterally purported to impose a "cap" on official time usage of 57 hours
for the entirety of the NLRBPA's Board-side unit for Fiscal Year 2019. [Exhibit 7.]

36.     On October 31, 2019, the NLRB issued a similar "notice" to the NLRBPA
in which it unilaterally purported to impose a "cap" on official time usage of 69

hours for the entirety of the NLRBPA's General Counsel-side unit for Fiscal Year 2019. [Exhibit 8.]

37.    On November 12, 2019, President Donald J. Trump issued a "Memorandum for the Federal Labor Relations Authority" (the "Removal Memorandum") delegating to the FLRA the authority to remove members of the Panel appointed by the President. 84 Fed. Reg. 63789-63790.

38.    On November 20, 2019, the NLRBPA filed a motion with the Panel asking it to remand the parties' dispute for further negotiations in light of the Agency's "notices" of October 18, 23, 25 and 31, and in particular, the fact that the parties' official-time ground rule lacked sufficient specificity to be enforceable in light of the Agency's unlawfully-implemented restrictions on official-time usage. The NLRBPA explained that the parties were no longer in agreement as to those ground rules. [Exhibit 9.]

39.    The NLRBPA's motion further asked, in the alternative, for the opportunity to file supplemental briefs concerning the Removal Memorandum and its effect, if any, upon the NLRBPA's constitutional arguments.

40.    On December 2, 2019, Defendant Panel, by member Osborne, issued a purported "Decision" reported at 19 FSIP 045. [Exhibit 10.]

41.    The literal entirety of the Decision's discussion of the NLRBPA's constitutional challenge to the appointments of Panel members is a single sentence, stating "The Union's argument is unpersuasive, the Panel is appropriately

appointed, and the Panel's jurisdiction over this matter is appropriate." No reasoning or analysis is presented in support of these *ipse dixit* declarations.

42.    In addition, the Decision summarily rejects each argument presented by the NLRBPA to the Panel as to both its statutory authority and the merits.

43.    Member Osborne's prejudice is unsurprising. His official biography states that he "is President and General Counsel of the Fairness Center, a nonprofit public-interest law firm *offering free legal services to those hurt by public employee union officials.*"  (Emphasis added.) Osborne helped to launch the Center in 2014, and, according to the Center's website, provides advice and counsel to clients, directs the Center's legal strategy, and oversees all litigation efforts. https://www.flra.gov/fsip_panel_bios (last visited January 10, 2020).

44.    In other words, Member Osborne's primary employment at this time is comprised of litigating cases against organizations similar to the NLRBPA.

45.    Any reasonable person would question whether decisions issued by Member Osborne are tainted by his financial and ideological conflicts of interest, or, at the very least, the appearance of impropriety in permitting him to simultaneously litigate cases against public-sector unions while purporting to neutrally decide cases between such unions and the United States.

46.    The Decision also wholly ignores the NLRBPA's motion of November 20, 2019, thereby failing to address either the lack of agreement as to official time or the effect of the Removal Memorandum.

9

47.    The NLRBPA has exhausted all opportunities to obtain relief from Defendants under statute or regulation. Although, the NLRBPA has moved for reconsideration of the Decision, the Panel's rules and regulations provide no procedures for such motions and consequently the NLRBPA has no reason to believe that such motion will be given consideration. [Exhibit 11.] Moreover, the Panel's order currently purports to bind the NLRBPA and the NLRBPA's motion for reconsideration does not stay its effect.

48.    The NLRBPA will suffer, and is suffering, irreparable harm from imposition of the Decision, including but not limited to forcing it to bargain under unlawfully-imposed conditions, forcing it to "agree" to terms which cannot be imposed upon a party by law because they are permissive subjects of bargaining, and forcing it to defend the validity of the grievances described above in paragraphs 22 through 24 from bad-faith attempts by the NLRB to leverage the Panel's decision into dismissal of those grievances. [Exhibit 12.]

## COUNT ONE

### (Violation of the United States Constitution; Appointments Clause)

49.    Plaintiff realleges and incorporates the allegations pled above in paragraphs 1-48 as though fully stated herein.

50.    The Panel Members hold positions "established by Law." Article II, Section 2, Clause Two of the Constitution.

51.    Pursuant to 5 U.S.C. §7119, the positions held by the Panel Members are continuing in nature.

52.     The Panel Members exercise significant authority pursuant to the laws of the United States with respect to alleged impasses in negotiations between an agency of the federal government and a labor organization representing employees of that agency.

53.     The Panel Members are "Officers of the United States." U.S. Const., Art. II, § 2, Cl. 2.

54.     Indeed, the Panel Members are issuing, and purportedly have authority to issue, final, binding decisions in the name of the Panel and of the United States.

55.     The decisions issued by the Panel Members are not appealable either to any Senate-confirmed Presidential appointee or to any Article III court.

56.     The members of the Panel are not removable from office except by the President or his delegates.  5 U.S.C. §7119 (3).

57.     The Panel possesses broad, virtually limitless authority to define procedures in any given case, including requiring cases to be "heard" before its Members.

58.     The Panel also possesses broad, virtually limitless authority to reach substantive outcomes in its cases.

59.     The Panel does not regard its own decisions as binding precedent.

60.     On information and belief, the number of federal civilian jobs actually or potentially subject to the Panel's authority is in excess of 1.2 million nationwide.

61.     Panel members' positions are not limited in tenure; they serve terms of five years and are eligible for indefinite reappointment by the President.  5 U.S.C. §7119(3).

62.     The Panel Members are therefore principal Officers of the United States who may not be appointed without Senate confirmation. U.S. Const., Art. II, § 2, Cl. 2.

63.     The Statute's failure to require Senate confirmation subjects the NLRBPA to decision-making at the hands of individuals who might not achieve confirmation if required to undergo it.

64.     Because each of the Panel Members was appointed without Senate confirmation, their actions are voidable upon a timely claim of right by an aggrieved party.

65.     Defendants possess no good-faith defense of the constitutionality of the Panel's structure and have compelled the NLRBPA to resort to litigation to harass the NLRBPA and/or to exhaust the NLRBPA's resources.

## PRAYER FOR RELIEF

66.     The NLRBPA respectfully requests that this Court enter judgment in their favor and against the Defendants, consisting of:

   a. A declaration that the Panel Members do not lawfully hold office, and that all acts the Panel Members have taken affecting the NLRBPA in Case Number 19 FSIP 045 are null and void in violation of the United States Constitution;

b.  The entry of a permanent injunction restraining the Panel, the NLRB,

and any persons acting in concert or participation with them from

giving effect to the Decision or any other act taken by the Panel or its

Members;

c.  The entry of a permanent injunction restraining the Panel, the NLRB,

and any persons acting in concert or participation with them from

issuing any future decisions or taking any acts with respect to the

NLRBPA until such time as the Panel possesses Senate-confirmed

members;

d.  An award of the NLRBPA's costs pursuant to the Equal Access to

Justice Act, 28 U.S.C. § 2412(a);

e.  An award of attorney fees pursuant to the bad-faith exception to the

American Rule as incorporated against the federal government by the

Equal Access to Justice Act, 28 U.S.C. § 2412(b);

f.  An award of costs and attorney fees on the basis that the government's

position lacked substantial justification pursuant to the Equal Access

to Justice Act, 28 U.S.C. § 2412(d); and

g.  Such other relief as the Court may find just and proper to remedy

Defendants' unlawful misconduct.

Respectfully submitted,

/s/ Robert E. Paul
Robert E. Paul (10239)
Law Offices of Robert E. Paul, PLLC
1025 Connecticut Ave NW, Suite 1000
Washington, DC 20036
(202) 857-5000
(202) 327-5499 fax
rpaul@robertepaul.com

Attorneys for Plaintiff
National Labor Relations Board
Professional Association