**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| NATIONAL LABOR RELATIONS BOARD PROFESSIONAL ASSOCIATION, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | | Civil Action No. 8:20-cv-00078-PX |
| | * | |
| FEDERAL SERVICE IMPASSES PANEL, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | *** | |

**MEMORANDUM OPINION**

Pending before the Court is a motion to transfer venue filed by Defendants Federal Service Impasses Panel ("the Panel") and the Federal Labor Relations Authority ("the FLRA"). ECF No. 16. Defendant National Labor Relations Board ("the NLRB") consents to the motion. The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court grants the motion to transfer.

**I.   Background**

Plaintiff National Labor Relations Board Professional Association ("the NLRBPA") is the exclusive bargaining representative for two bargaining units comprised of approximately 120 professional employees who work at the NLRB's headquarters in Washington, D.C. ECF No. 1 ¶ 15. One of those bargaining units represents NLRB employees working directly for the NLRB and the other unit represents employees of the NLRB's General Counsel's Office. *Id.* ¶ 16; ECF No. 1-11 at 2. The NLRBPA's principal place of business is its President's home office located in Silver Spring, Maryland. ECF No. 19-1 ¶¶ 2–3.

Defendant FLRA, a federal agency, is tasked with establishing policies and guidance pertaining to labor-management relations for federal government employees. *See* 5 U.S.C. §

7105; ECF No. 1 ¶ 11.  The Panel falls under the auspices of the FLRA, and is empowered by the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7101 *et seq.*, to resolve federal-sector bargaining impasses by "tak[ing] whatever action is necessary and not inconsistent with [the Statute] to resolve the impasse." § 7119(c)(5)(B); ECF No. 1 ¶ 4.  The Panel retains broad authority to "investigate any [negotiation] impasse presented to it," and its actions are "binding on [the] parties during the term of the agreement, unless the parties agree otherwise." § 7119(c)(5)(A),(C); ECF No. 1 ¶¶ 6–8.

Panel members are appointed for five-year terms by the President of the United States, without Senate confirmation. § 7119 (c)(2)-(3).  ECF No. 1 ¶ 9.  The Panel is based physically in Washington, D.C. and conducts is operations out of its Washington, D.C. office.  *See, e.g.*, ECF Nos. 1-1, 1-2, 1-4.

From October 2018 to May 2019, the NLRBPA engaged in negotiations with the NLRB pertaining to new collective bargaining agreements for both units.  ECF No. 1 ¶¶ 17–24. According to the NLRBPA, negotiations deteriorated almost as soon as they began.  The NLRBPA filed multiple grievances, arguing that the NLRB negotiated in bad-faith and that it insisted on the NLRBPA's waiver of statutory rights in the bargaining process.  *Id.* ¶¶ 17–24.

With negotiations stalled, the NLRB requested assistance from the Panel.  *Id.* ¶ 23.  On May 28, 2019, the Panel announced it would first investigate whether it should assert jurisdiction over the impasse.  *Id.* ¶ 25.  After receiving written briefing from both sides, the Panel decided to exercise its authority to preside over the entire bargaining dispute.  *Id.* ¶¶ 27–28.  The Panel ordered the parties to submit final offers on the issues at impasse and a statement of position.  *Id.* ¶ 28; ECF No. 1-4.

The NLRBPA's final position statement argued that because the NLRB proposals were

presented in bad faith and addressed permissive subjects of bargaining, no valid impasse could exist.  ECF No. 1 ¶ 29; ECF No. 1-5. The NLRPA also raised that the Panel, comprised of members selected solely by the President and without Senate approval, acted in violation of the Appointments Clause of the United States Constitution, and thus without any lawful authority.  ECF No. 1 ¶ 30; ECF No. 1-5.

On December 2, 2019, the Panel issued its decision regarding the impasse.  ECF No. 1 ¶¶ 40–41; ECF No 1-11.  In it, the Panel summarily concluded that it is "appropriately appointed, and the Panel's jurisdiction over this matter is appropriate." *Id.*  The Panel also ordered the parties to adopt several ground rules as part of its negotiation process going forward.  ECF No. 1 ¶ 42; ECF No. 1-11.

In response, the NLRBPA filed suit in this Court on January 10, 2020, contending solely that the Panel is unlawfully constituted under the Appointments Clause of the United States Constitution.  ECF No. 1 ¶¶ 49–65.  The NLRBPA requests as its remedy that this Court declare that the Panel Members do not lawfully hold office, and thus the Panel's Decision must be vacated.  *Id.* ¶ 66.

On January 15, 2020, the NLRBPA moved for injunctive relief, to which the Defendants responded.  ECF Nos. 4, 17.  Defendants also separately moved to transfer venue to The United States District Court for the District of Columbia.  ECF No. 16.  For the following reasons, the Court agrees that transfer is appropriate, and will grant Defendants' motion.  The NLRBPA's motion for preliminary injunction (ECF No. 4) is denied as moot.

II.     Analysis

The propriety of transfer is governed by 28 U.S.C. § 1404(a), which states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any

civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." To prevail on a transfer motion, "the defendant must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 680–81 (D. Md. 2010) (quoting *Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp. 2d 710, 711 (D. Md. 2002)) (internal quotation marks omitted). The defendant cannot rely on conclusory allegations of hardship to meet this burden but rather must demonstrate, by affidavit or otherwise, evidence of "the hardships they would suffer if the case were heard in the plaintiff's chosen forum." *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002).

When deciding the propriety of transfer, the Court must first determine whether the action could have been brought in the requested venue. *In re: Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (4th Cir. 2008). If venue is proper in the requested forum, the Court next considers several factors, to include: "(1) the weight accorded the plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002). Notably, district courts retain "broad discretion" in weighing these factors and in ultimately deciding the propriety of transfer. *Volkswagen*, 545 F.3d at 312.

It is undisputed that this case could have been brought in the District of Columbia. ECF No. 16 at 7; ECF No. 19 at 2. Accordingly, the Court turns to each of the factors relevant to whether transfer is warranted.

A.   **Plaintiff's Choice of Venue**

Generally, the "plaintiff's forum choice of venue is 'entitled to substantial weight.'"

*Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005) (quoting *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256 (E.D. Va. 1988)).  However, where the chosen forum "'has little connection to the merits of the underlying dispute,'" the plaintiff's forum choice is given less weight.  *Int'l Painters & Allied Trade Indus. Pension Fund v. Marrero Glass & Metal, Inc.*, No. ELH-18-452, 2019 WL 423409, at *4 (D. Md. Feb. 1, 2019) (quoting *Lynch*, 237 F. Supp. 2d at 617).

The NLRBPA rightfully points out that it is headquartered at its President's home office in Maryland.  ECF No. 19-1 ¶¶ 1–3.  However, this is where the relevant ties to this district begin and end.  At the heart of this suit is whether the Panel Members' appointments, and by extension the Panel decisions, pass constitutional muster.  ECF No. 1 ¶¶ 49–65.  This underlying dispute centrally concerns the structure and operations of the Panel as well as the finality of the Panel's decisions.  *See* ECF No. 4-1 at 24–34.

Once the dispute, as pleaded, is put in proper focus, it becomes clear that the case concerns matters that take place exclusively in the District of Columbia. The Panel's physical location is Washington, D.C., where its members deliberate,[1] hold its proceedings, and render decisions.  *See* ECF Nos. 1-2, 1-4, 1-11; ECF No. 1 ¶¶ 25–27, 40–42, 43–45.  Indeed, the very appointment process—with which the NLRBPA finds fault—occurs in D.C.  ECF No. 1 ¶ 9.  Moreover, in this case, if relevant at all, the NLRBPA and NLRB negotiations occurred at the NLRB's D.C. headquarters.  *See* ECF Nos. 2–4, 8, 10–13.  And the unit employees, for whom the NLRBPA bargains, all work at headquarters.  ECF No. 1 ¶ 15.  The Court cannot discern, therefore, how the merits of this claim are connected to this forum.  Because all relevant facts

---

[1] The NLRBPA notes that some deliberations may have occurred in Pennsylvania, as one of the Panel members is based in Pennsylvania. ECF No. 19 at 6.  Even if true, Plaintiffs have failed to show that any deliberations—or any other Panel activity—occurred on Maryland.

concerning this claim occurred in D.C., the NLRBPA's choice of forum is afforded comparatively less weight.

In opposing transfer, the NLRBPA primarily argues that Maryland remains the proper forum because a quarter of its represented employees occasionally telework from Maryland. The Court sees little relevance in this respect. As pleaded, none of the relevant events regarding the Appointments Clause violation occurred at an employee's home office. Indeed, as the NLRBPA explains, employees who wish to engage in collective bargaining must be physically present at the NLRBPA's Washington, D.C. headquarters. ECF No. 19 at 4 n.3. ("[M]ultiple members of the NLRBPA's bargaining committee are currently reporting from their homes in Maryland to Board headquarters in Washington, D.C. to engage in the negotiations covered by the Panel's ground-rules order on days they would otherwise be teleworking in Maryland.").

Relatedly, the NLRBPA presses that Maryland's forum is proper because the Panel's determinations are felt by employees who live, and occasionally telework, in Maryland. ECF No. 19 at 4–5. However, teleworking aside, it is undisputed that the employees' official worksite is in D.C. More to the point, the NLRBPA has failed to show how its challenge to the very constitutionality of the Panel bears any relation to where its own employees sit on any given day. *Cf. Marrero Glass & Metal*, 2019 WL 423409, at *4 (the plaintiff's choice is "significantly lessened" where the chosen forum "'has *little* connection to the merits of the underlying dispute.'") (emphasis added). Thus, because all events relevant to the action occurred in D.C., the NLRBPA's choice of forum is accorded little weight.

### B.     Convenience of Witnesses and Parties

As to witness convenience, this second factor is perhaps "most important" to the transfer analysis. *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md.

2000). In this matter, however, the Court views this factor as a wash. The Greenbelt and D.C. federal courthouses are only fifteen miles apart. Public transportation is easily accessible, and even with traffic, D.C. witnesses may reach the Greenbelt Courthouse in under an hour, as is evident by the D.C. residents who routinely litigate their matters in this forum. Likewise, the parties are located near both courthouses and can appear in either forum without difficulty. Thus, the convenience of the parties and witnesses neither support nor defeat the motion.

### C.     Interest of Justice

As to the interests of justice, this factor "encompass[es] all those factors bearing on transfer that are unrelated to the convenience of witnesses and parties." *Cross*, 383 F. Supp. 2d at 857. One factor critically relevant in this matter is the need to avoid "duplicative litigation in different federal courts." *Cronos Containers*, 121 F. Supp. 2d at 46; *see also* 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed.) ("[M]any courts have transferred to a forum in which other actions arising from the same transaction or event, or which were otherwise related, were pending."). Preventing duplicative litigation allows for the conservation of judicial resources and the "comprehensive disposition" of claims. *See Mamani v. Bustamante*, 547 F. Supp. 2d 465, 474 (D. Md. 2008). Transfer of similar claims to one jurisdiction is also in the interests of justice so as to avoid inconsistent results, *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 783 (D. Md. 2009), even where the particular parties may not be precisely identical. *See, e.g., Marrero Glass & Metal Inc.*, 2019 WL 423409, at *1; *Evans v. Arizona Cardinals Football Club, LLC*, No. CV WMN-15-1457, 2016 WL 759208, at *4 (D. Md. Feb. 25, 2016).

This factor clearly weighs in favor of transfer. The identical appointments clause challenge against the Panel is currently pending in the D.C. district court which has yet to rule on dispositive motions. *See American Federation of Government Employees v. Federal Service*

*Impasses Panel*, 19-cv-1934-RJL (D.D.C.). The Panel and FLRA are also defendants in the D.C. case. *Id.* Accordingly, transfer will not only conserve judicial resources by allowing the forum currently wrestling with this important constitutional question to address both matters, *cf. Mamani*, 547 F. Supp. 2d at 474, but will also avoid inconsistent determinations. *Cf. D2L Ltd.*, 671 F. Supp. 2d at 783. This Court cannot predict or promise that this case will be consolidated with the one presenting pending in the D.C. district court. But absent transfer, there would be no such opportunity for either party to request, or for the court to consider, consolidation. The Court concludes that the interest of justice weighs heavily in favor of transfer.

In sum, although this Court recognizes that the NLRBPA's original choice of forum must be accorded significant weight, it is in this case eclipsed by the other countervailing factors. The Court is persuaded that the United States District Court for the District of Columbia is the proper forum for this matter when considering all events relevant to the single Appointments Clause challenge took place in D.C., and transfer will go far in avoiding duplication of judicial resources and inconsistent judgments. Defendants' motion to transfer (ECF No. 16) is granted. The NLRBPA's motion for preliminary injunction (ECF No. 4) is denied as moot.

A separate Order follows.

| | |
|---|---|
|    4/2/2020 |    /S/ |
| Date | Paula Xinis<br>United States District Judge |